Mr. F. Egan, you are entitled to 15 minutes, but we have not discussed this case. Let me see if I can encapsulate what appears to be the situation, and then if you don't mind that if my colleagues don't object, let me ask Mr. Birchmeier, if I'm saying that correctly, why I'm wrong. It seems to me we've got a situation where there's a 1983 claim based upon excessive force. The facts are, as you folks know better than me, that it's a domestic disturbance. Police are called. They're either forced their way in or they're admitted, but somehow they come in. Kevin Bender is arrested. It's pandemonium. At some point in time, either inside of the house or outside of the house, he's handcuffed and taken out. The allegations are, and the deposition is, that at some point during the time he was handcuffed, he was struck, it appears with a flashlight, at least one of the daughters said he was struck somewhere in his body with a flashlight after he was subdued, and then it looks like, as they say in Philadelphia, a police feeding frenzy occurred, and the police just kind of dropped in, because during the course of that, he had some point, I guess before this, he kicked one of the police officers, pled guilty to forcefully aggravated assault on a police officer. The district court concluded that because he admitted resisting arrest and assaulting an officer, the force that was used was reasonable. Your contention is, even if he, as he says he did, assault a police officer, there's still a limit as to how much force you can use, and there's an issue of fact here about whether or not the force that these police used on your client was excessive. And it appears to me, frankly, that the district court looked at this case and said, this thing is a cold stone loser if it gets in front of a jury and blown it out on summary judgment. And you're saying, maybe it is, but I'm entitled to get to a jury. Is that basically your... It is very much my... OK, well, let me ask Mr. Birchmire, what's wrong with that contention, if you don't mind? Why isn't this simply a case where the district court said this case is a stone cold loser if it gets to a jury? These slobs, this slob kicked a police officer. He may or may not have been entitled to get tuned up the way the police tuned him up. But as far as I'm concerned, summary judgment is granted. How can you say there's not an issue of fact? And if you could, in the middle of all that, just give me a name for the record. Thank you, Judge. My name is Tim Birchmire from Waltham and Cal Birchmire from Cal, and I represent the defendant, Pat W. And you're really seriously saying there's no genuine issue of material fact about whether or not somebody hit the officer with a... with a flashlight and jumped in after that? Or are you saying that, assuming they did, as we have to, strike him with a flashlight and jumped in, that that was reasonable? Judge, I am agreeing, obviously, with what the conclusion that Judge Arenas made, and he did accept those facts and assume that those facts that the plaintiffs pled or alleged or said in the deposition were accurate and found that, given the fact that he was resisting arrest, given the fact that he pled guilty to the aggregated assault, that the force that was used by the officers, and I think it's important to note that the plaintiff appellant has never really set forth... I mean, I represent four individual officers, one of whom claims was not even at the scene, was a supervisor who processed the plaintiff when he came back to the Monmouth Township Police Department. Isn't it relevant, the fact that he was handcuffed at the time? Isn't it relevant that he was handcuffed at the time that he claims he was struck? I think behind his back. The assertion is he's cuffed behind his back, and then, in a fit of anger, one of the police officers hits him in the face with a flashlight. That's the factual assertion. Whether you agree with it or not is obviously... It's a factual assertion, but there's also the factual assertion that I don't think is disputed. Actually, this court had requested a copy of the... Guilty plea colloquy. Guilty to fourth degree aggravated assault. A very unenlightening colloquy. Absolutely. I actually questioned my own discovery practice when I got that letter from the court. I searched through my file. I had an I.S. for that, a copy of the guilty plea colloquy. But then, in looking at it, the plaintiff admitted that he pled guilty to aggravated assault on a police officer. But, if you read that colloquy, while it's very short, he admits that he committed that aggravated assault once he was handcuffed. He kicked him. He kicked the officer. He kicked him in the groin. So, still under New Jersey... What if, in response to that, the officer had said, you're out of here, bender. Laid him face down on the pavement. Put a gun to his temple and pulled the trigger. Saying, we're going to show you we don't kick police officers in the groin. That would have been appropriate? That would have been reasonable for us? We're talking about the continuum of force that's permitted under... Right. Would that have been reasonable for us? Absolutely not. Okay. Shouldn't a jury decide we're on the continuum we are here? That's the only issue before us. Why shouldn't a jury decide whether or not what they think they can prove. One, whether or not they can prove these allegations. If they can prove it, whether or not, in the jury's mind, the police acted reasonably. Given the kick to the groin. Judge Arenas did consider, and looked at, and gave plaintiffs all the benefit of the doubt. I read his opinion. He's got one paragraph in his opinion where he says, the defendant pled guilty to aggravated assault on a police officer. Basically, summary judgment denied. There's no analytical step in the opinion between resisting arrest, aggravated assault, and therefore, no constitutional violation. There's nothing that says, a flashlight to the face while you're cuffed, is under these circumstances reasonable, and therefore, no constitutional violation. That's missing. So, I guess, we're a little bit at sea here, because you seem to be saying that Judge Arenas took all that into account, but we can't really tell that from what's written. All he said was, on page 8 of his opinion, because of Mr. Bender's resistance to arrest and assault of the police officer, the force used by defendant police officers to subdue and detain him is reasonable under the Fourth Amendment. The court will grant summary judgment. And that's it. There's more pages to it, but that's the guts of his analysis. There's no analysis. In terms of the guts of his analysis, what he does, which is really contrary to what the opponents argue, that the judge didn't even consider their version of the facts, is that there is an entire paragraph in the court's opinion, in addition to other paragraphs, on page 4 of the court's opinion, the second full paragraph of Judge Arenas' opinion, which starts off with, the court has had different accounts of what occurred once the officer entered Plaintiff's home, and while it did not talk specifically, Judge Jordan, you're right, about the use of a flashlight, still that was, those were facts that were briefed below in the motion for summary judgment. The opposition to the motion for summary judgment, I don't want to assume anything as to what Judge Arenas did, but that paragraph... He recited some of the facts, and he says that the assault's plaintiff's claim broke a bone in Mr. Bender's face, but of course that claim has to be assumed as true for purposes of summary judgment. So we have a situation where the evidence, which the district court had to assume is accurate, is that the defendant resisted arrest, kicked one of the officers in the groin, and may well have had a scuffle with the others, and after that, a police officer took a flashlight, hit him in the face with sufficient force to crack a bone in his face, and Judge Arenas is saying, as a matter of law, that's reasonable. That boggles the mind. I don't think... I think there is certainly a factual dispute as to when the injury occurred to the plaintiff. I agree, I agree. That is the point. In and of itself, that's enough for summary judgment. When the injury occurred is important, crucial. Why isn't that something that precludes summary judgment? Because once again, Judge, under that Fourth Amendment analysis, and looking at the totality of the circumstances, and I think Judge Arenas talked about that, and looking at the transcript of the 9-1-1 call, and looking at the... I have a copy of the... I provided a copy of the transcript of the 9-1-1 call, which is disturbing enough, but through discovery, we got the actual tape. Well, I haven't seen the tape, obviously. That's why I said that in front of a jury, this case is a dead loser, and this is about as unsympathetic a plaintiff as I've seen in a while. I've seen some pretty unsympathetic plaintiffs, but as a matter of law, that doesn't alter the fact that it seems to me, and I think you just conceded, there's an issue of material fact. Let me put it this way, and you don't have to answer this. I don't know the feeding chain, or the pecking order, or the totem within your office, so I don't want to force you to respond to this. You might have to have a family to support, and I understand that you're here as an advocate and a litigator, but there's really nothing wrong, assuming that you're not going to lose your job because of it. I assume you're a superior, so not in the courthouse. There's really nothing wrong with saying, well, your Honor, I've looked at the record, I've looked at the opinion, and I must concede that there is a genuine issue of material fact here, and I would not oppose this matter being remanded back to the district court. I wouldn't necessarily demand that one would say that, but I could understand why a counselor in your position with this record might want to consider that as your appellee's argument. Take the fifth. I just concede, look, the district court got it wrong, respectfully. Okay, state or private? What did you do? This is off the record, beyond the record. What did you do in those cases? Just between us and everybody on the Internet here. What did you do in those cases? Did you stand up and make a valiant argument on behalf of the appellee? I made the legal tactic of not requesting oral arguments, so I was not faced with that decision to make in front of your Honors. Okay. Well, just some questions for Mr. Abedizian, if I might. Okay. He might want to bring us out on his brief. Do you want to ask him a question? Yeah. Okay. Please. Thank you. Mr. Abedizian? I just want to make sure I understand what's not in dispute, okay? Mr. and Mrs. Bender come home from a party, and I'm sure I'm not the first one to note there's a little bit of irony in their name under these circumstances. She's certainly intoxicated. He's been drinking. Right? That's undisputed. She can't get the key in the door. She's so drunk, and that makes him angry, right? Right. There's a domestic dispute that falls in which Mr. Bender and Mrs. Bender and the eldest daughter, Colleen, are all slapping each other, right? Something along those lines. Well, I mean, that's undisputed, right? Undisputed. Okay. Then Mrs. Bender flees into the house, barricades herself in the bathroom to call 911, and Mr. Bender, in a violent rage, tries to break the door down, right? There was screaming. I don't believe he was trying to break the door down. What I read, I read nothing to contradict both the 911 transcript and the testimony under oath of one or more of the daughters that he was trying to break the door down. So if that's in dispute, I'd like to know where it is in the record. Just to follow up on that, I believe the daughter did say he was trying to break the door down. I believe that Mr. Bender said he would kick the door down, whether he actually kicked the door down. Okay. So he says he did, she says he did, and the 911 call has one of the voices, presumably Colleen, the daughter, yelling, don't let him in, indicating that he's trying to get in and she's telling the mother, don't let him in. All right. So then Colleen goes outside, calls 911 on her cell phone, and the tape of the call reveals, without reading it in the record, but screaming, arguing, swearing, and please for help. Right? Correct. The police arrive and they find by that time Mrs. Bender outside with Colleen, and Mr. Bender barricaded in the house. He won't let him in, right? Correct. He'd lock the door in. Right. Then they break the door in. They have to kick the door in. They have to kick the door in. Correct. Right. And there's sort of a Keystone Cops moment in the view of Colleen Bender that they try to kick the door down numerous times before they finally make it happen. They didn't make it happen. Okay. So it's not as if Mr. Bender didn't have a chance to run over and open the door because the poor police officers, I shouldn't make it sound like that. I mean, they're doing their best and it's a pretty sturdy lock. It takes more than a kick or two to get the door in. And had Mr. Bender wanted to open the door, he clearly could open the door, but the facts seem to indicate he was trying to keep them out and they had to break in. Am I right? Well, just to add to that, Mr. Bender and his two daughters, who were inside, stated that he kind of froze when they started kicking the door and then right about the time that they kicked it open, he was proceeding toward the front door. But there is no dispute that at least on their initial kick, he did not open the door. Yeah. Well, not on their final kick either. They get in because they kicked the door in. Yes. Okay. And that's where the facts start to diverge. Because in Mr. Bender's version of it and the family's version, he becomes suddenly meek and compliant and lifts his hands in the air and they tackle him and smash his head into a coffee table and begin to beat him. If I've got the gist and tone and assertions of the plaintiff correct, he's hands in the air, empty-handed, ready to be taken into custody. Whereas the police version is he's in a fighting stance, he's got a hand tool in his hand, and he's prepared to fight. An Allen wrench. An Allen wrench, which apparently it was described as being held with the narrow end of the material on the inside of his hand. It's the only way you can hold an Allen wrench. So he's got this tool, some implement that you could say is a sharp metal object that he's going to ward people off with. And I guess, and it's also undisputed, that at some point in this venture, he kicks an officer in the groin. Right? He's hit in that area. In that area. Okay. Okay. Now, I guess in this context, the question I've got for you is that this seems like it's pretty hard to reconcile. Once the doors kick down, it's pretty hard to reconcile the two versions of the facts that are coming from the two sides. Would you agree with that? Yes. You know, either he was a compliant, willing person, ready to be taken into custody, assaulted with a flashlight after he's cuffed, or, as the police say, he was fighting like crazy and continuing the behavior that was indicated by the 911 call and the pleas for help. And if those things are so irreconcilable, the reason I'm taking the time to ask you these questions is, I hope your clients recognize that, and frankly that the other side recognizes, not just your clients, that both sides recognize that where you've got factual assertions  that one party or the other, whoever is determined to be making things up, has got some risk. And that's something both sides ought to be thinking about when they're figuring out what they want to do. Because you cannot just lose a case. You can feel the force of a court deciding that it's a case or a defense, that shouldn't have been advanced. And that's what really struck me about this, is that these are very different accounts of the facts. I mean, dramatically different. Very hard to reconcile. It's just not one of these cases where you think, well, something in the middle might have happened. And when you face a circumstance like that,  to make sure people understand, you know, there's more than just losing a case here that's possible. Okay, I'm done. Okay, I must say, I had forgotten a bit about the elements. There's not exactly Ossie and Harriet Nelson. That's probably before your time. I've used that term myself. Ossie and Harriet? It's not Ossie. Do you remember Ossie and Harriet Nelson? I remember Ossie and Harriet. You guys have been very kind to you, because I wouldn't have thought you were old enough to remember that. I know the reruns. Oh, thanks. I'll get you for that, the reruns. It's too late for you. It's too late now. Well, thank you very much for I guess what we call certainly an interesting argument, an interesting case. I don't know that it's necessary to summarize, but what is important is that